Unpublished opinions are not binding precedent in this circuit.
DIAZ, Circuit Judge:
Michael Sanderson was indicted for failing to register as a sex offender in South Carolina, in violation of 18 U.S.C. § 2250. The district court determined that Sander-son is incompetent to stand trial and ordered that he be involuntarily medicated in an attempt to restore competency. Sand-erson appeals, claiming that involuntary medication, in this instance, does not comply with the requirements of the Fifth Amendment’s Due Process Clause. For the reasons that follow, we affirm.
I.
In 1998, Sanderson was convicted of attempted aggravated sexual battery in Virginia state court, based on an incident involving an eleven-year-old girl. Because of his conviction, Sanderson was required to register as a sex offender. He was convicted twice in Virginia state court for failing to register.
Toward the end of 2010, Sanderson moved to South Carolina, where he again allegedly failed to register. After Sander-son missed a scheduled meeting with a probation officer in Virginia, a warrant was issued for his arrest. Thereafter, federal authorities arrested him at a motel in Greenville, South Carolina. Sanderson’s motel room was littered with pornographic pictures and contained an intricate memorial to a country music star, who Sander-son claimed was his common law wife. A federal grand jury indicted Sanderson for failing to register pursuant to the Sex Offender Registration and Notification Act (“SORNA”), in violation of 18 U.S.C. § 2250.
Following the indictment, Dr. Dawn Graney, a forensic psychologist at the Federal Correctional Institution, Butner (“FCI *234 Butner”), provided the court with an initial mental health evaluation, which summarized Sanderson’s lengthy history of mental health treatment. Dr. Graney offered a diagnosis of Personality Disorder Not Otherwise Specified with Antisocial Features and provisional diagnoses of Schi-zoaffective Disorder, Alcohol Dependence with Physiological Dependence in a Controlled Environment, and Paraphilia Not Otherwise Specified. During the evaluation, Sanderson was defensive, rejected the diagnosis of mental illness, and refused to take medication. Dr. Graney concluded that Sanderson would be unable to assist in his own defense, but that there was a substantial probability that antipsychotic medications could restore Sanderson’s competency.
On July 6, 2011, a magistrate judge conducted an initial competency hearing and (1) held that Sanderson was not competent to stand trial; and (2) ordered that Sand-erson remain at FCI Butner for further treatment.
Several months later, Dr. Bryon Herbel and Dr. Robert Cochrane submitted a second forensic evaluation report. They diagnosed Sanderson with Schizophrenia, Paranoid Type, with Interepisode Residual Symptoms; Alcohol Dependence in Early Full Remission in a Controlled Environment; Cannabis Abuse in Early Full Remission in a Controlled Environment; Paraphilia Not Otherwise Specified; and Antisocial Personality Disorder. Drs. Herbel and Cochrane noted that prior evaluations described Sanderson as being a moderate risk to reoffend; however, they offered no independent opinion concerning Sanderson’s risk for recidivism as a sex offender.
Drs. Herbel and Cochrane concluded that Sanderson remained incompetent to stand trial. They also found that involuntary medication was substantially likely to return Sanderson to competency and substantially unlikely to have side effects that would interfere significantly with Sander-son’s ability to assist in his own defense. Drs. Herbel and Cochrane proposed a specific treatment plan, which they concluded to be medically appropriate.
The district court held a second competency hearing, at which Dr. Herbel was the only witness. Consistent with his report, Dr. Herbel testified that there was a substantial probability that antipsychotic medications would restore Sanderson’s competency. to stand trial and that less intrusive measures would not be effective. Dr. Her-bel also testified that there was no evidence that Sanderson posed any danger to himself or others and that Sanderson would therefore be unlikely to satisfy the criteria for civil commitment. At the conclusion of the hearing, the court indicated it would order that Sanderson be involuntarily administered antipsychotic medications. On January 30, 2012, the court issued a written order.
This appeal followed. We have jurisdiction to review the district court’s interlocutory order pursuant to Sell v. United States, 539 U.S. 166, 176-77, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003) (holding that an order to involuntarily medicate a defendant is an appealable “collateral order”).
II.
A.
Sanderson contends that the district court erred in granting the government’s request that he be involuntarily administered antipsychotic medications. To assess that contention, we consider whether the record evidence presents special circumstances sufficient to overcome the government’s concededly significant interest in prosecuting Sanderson’s alleged SOR-NA violation. We review the district *235 court’s analysis of this issue de novo. United States v. White, 620 F.3d 401, 410 (4th Cir.2010).
An individual has a constitutionally protected liberty interest in avoiding involuntary administration of antipsychotic drugs, which may only be overcome by an “essential” or “overriding” state interest. Sell, 539 U.S. at 178-79, 123 S.Ct. 2174. The Supreme Court has suggested that the instances in which the government may seek such a remedy to restore a defendant’s competency to stand trial “may be rare,” id. at 180, 123 S.Ct. 2174, and we too have cautioned against making this a routine remedy, see White, 620 F.3d at 422.
When the government seeks to forcibly medicate a defendant to stand trial, the Due Process Clause requires that the government establish by clear and convincing evidence that (1) important governmental interests are at stake and not outweighed by special circumstances that diminish those governmental interests; (2) involuntary medication will significantly further those governmental interests; (3) involuntary medication is necessary to further those interests; and (4) the administration of the drugs is medically appropriate. Sell, 539 U.S. at 180-81, 123 S.Ct. 2174; United States v. Bush, 585 F.3d 806, 813-14 (4th Cir.2009).
With respect to the first factor, the Supreme Court has provided an illustrative list of “special circumstances” that could override an important governmental interest: (1) the potential for civil confinement; (2) the potential for future confinement for a defendant who regains competence; and (3) the length of the defendant’s incarceration while charges are pending. Sell, 539 U.S. at 180, 123 S.Ct. 2174.
In White, we concluded that the government’s interest in prosecuting a defendant for conspiracy, credit card fraud, and identity theft did not outweigh her liberty interest. 620 F.3d at 422. In doing so, we relied on four special circumstances: (1) White would likely have spent a “significant amount of time” in pretrial detention in relation to her likely sentence before her trial could even begin; (2) White’s alleged crimes were entirely non-violent; (3) White would likely not pose a threat to the public, because she would not be permitted to carry a firearm; and (4) the proposed antipsychotic drugs had rarely been tried on someone with White’s diagnosed condition. Id. at 413-14.
With this legal framework in place, we turn to consider the parties’ contentions on appeal.
B.
Sanderson argues only that the government has failed to satisfy the first Sell factor. While conceding that there is an important governmental interest in prosecuting the SORNA offense, Sanderson contends that the following special circumstances of his case override the government’s interest in prosecuting him: (1) the charged offense is non-violent and victimless; (2) even if released, Sanderson will be monitored under SORNA and remain on indefinite probation in Virginia; (3) Sanderson does not pose any danger to the public or himself, as evidenced by his lack of criminal behavior in the last ten to fifteen years, except for his failure-to-register offenses; (4) Sanderson will have spent a significant amount of his likely sentence in pretrial detention by the time he would be medicated and tried; and (5) the government could easily try Sanderson later if he regained competency because the evidence against him is largely documentary and not dependent upon the memory of witnesses.
*236 The government contends that none of Sanderson’s supposed special circumstances outweigh its interest in prosecuting the charged offense. According to the government, it is irrelevant that Sander-son’s alleged crime is non-violent because SORNA aims to protect society from sex offenders by providing information concerning them location. In the government’s view, the charged offense is deemed serious because of the threat to society as a whole. Second, the fact that Sanderson is already subject to monitoring and supervision provides little comfort to the government; Sanderson faces prosecution precisely because he has ignored those requirements. Third, the government says that Sanderson poses a threat if released because he is a sex offender who has repeatedly violated his obligation to register and has a history of violent offenses. Fourth, the government contends that the length of Sanderson’s pretrial detention is not long in relation to his likely sentence, and he is likely to be restored to competency by antipsychotic medications. Finally, the government posits that a trial may never occur unless Sanderson receives medication because Sanderson is not likely to regain competency on his own and even if he does, the government may well face challenges locating Sanderson in the future.
The district court agreed with the government. It concluded that Sanderson’s failure-to-register offense, which carries a ten-year maximum sentence, is a serious offense that the government has an important interest in prosecuting. The court rejected Sanderson’s argument that special circumstances override that interest. First, it concluded that Sanderson’s then eleven-month period of pretrial confinement was fairly brief compared to his likely sentence. Second, it found that Sander-son’s competence is likely to be restored by the prescribed treatment plan. Therefore, the court concluded that the first Sell factor was satisfied. The court also concluded that the remaining Sell factors, which are not challenged on appeal, were satisfied.
C.
We hold that the relevant special circumstances in this case are insufficient to override the government’s interest in prosecuting Sanderson for the charged SOR-NA offense. Considering Sanderson’s purported special circumstances as a whole, they present a less compelling argument against forcible medication than the circumstances in White and fail to mitigate the government’s interest in prosecuting him.
To begin with, the nature of the crime weighs in favor of forcible medication. While Sanderson’s alleged SORNA violation is technically a non-violent crime, the government correctly notes that the purpose of failure-to-register laws is to protect society as a whole from sex offenders. This stands in contrast to the nature of the credit card fraud and identity theft crimes charged in White, which, while certainly serious, are different in both degree and kind.
Second, the monitoring requirements imposed by SORNA and Virginia’s probation judgment do not help Sanderson here. Indeed, the factual record is replete with instances of Sanderson ignoring these requirements, including two convictions in Virginia for failing to register, along with his absconding from supervision in Virginia when he moved to South Carolina.
Third, the issue of whether Sanderson poses a public threat weighs in favor of forcible medication. We acknowledge that Sanderson has not been convicted of any crime, other than failing to register, since 1998. Nor does the record contain any *237 evidence that Sanderson has been aggressive or violent during that period. Nonetheless, Sanderson has a history of violent offenses predating the offense giving rise to his registration obligation, including assault with a deadly weapon, various firearms offenses, and battery. Further, Sand-erson’s argument that he has not been prone to violence since 1998 is undercut by the fact that he has spent a substantial amount of that time in prison. And while Dr. Herbel’s opinion that Sanderson “does seem to have some kind of sexual problems” is not particularly compelling, J.A. 69, previous psychosexual reports indicated that Sanderson was at a “moderate risk” to reoffend in the community. Our concerns about Sanderson’s record are buttressed by SORNA’s policy that previous sex offenders should be monitored because they pose future threats. And the fact that Sanderson, while posing a potential threat, is not dangerous enough to be a candidate for civil commitment weighs in favor of forcible medication because Sand-erson will go free if he is not restored to competency. See United States v. Evans, 404 F.3d 227, 239 (4th Cir.2005).
Fourth, the length of Sanderson’s pretrial detention does not greatly mitigate the government’s interest. In White, the defendant had spent nearly forty-one months in prison by the time we issued the majority opinion in her case, a period of confinement that the opinion’s author suggested might be close to that she was likely to receive based on her Guidelines sentence. See White, 620 F.3d at 418 (Davis, J.).[1] By comparison, Sanderson had spent approximately two years in pretrial detention[2] when we heard oral argument in this case. In the district court, counsel estimated Sanderson’s Guidelines sentence to be forty-one to fifty-one months’ imprisonment. Assuming that this range is a reasonable estimate of Sanderson’s expected prison sentence, the length of Sanderson’s pretrial detention does not detract substantially from the government’s interest in prosecuting him.
Apart from White, we have looked to the statutory maximum in assessing the length of pretrial detention, a test under which Sanderson fares worse. For example, we previously held that two years of pretrial detention did not constitute a significant “special circumstance” for a defendant facing a potential eight-year sentence. Evans, 404 F.3d at 239. Sanderson faces an even greater statutory maximum sentence of ten years. Thus, while Sanderson’s extensive period of pretrial detention weakens the government’s interest in prosecuting the offense, it does not defeat it entirely under either the measure employed in Evans or Judge Davis’s opinion for the court in White.[3]
*238 Fifth, while it is true that the government will not be substantially burdened in proving the offense if the case is delayed, the record suggests that Sanderson will not regain competence without medication. Therefore, the theoretical potential of a future prosecution does little to weigh against the government’s interest in trying Sanderson now.
Finally, the likely effectiveness of the prescribed medication on Sanderson’s illness supports the government’s request. Although this consideration appears to mirror the second Sell factor — whether “administration of the drugs is substantially likely to render the defendant competent to stand trial,” 5B9 U.S. at 181, 123 S.Ct. 2174 — we have previously used this as a consideration in analyzing the first factor as well. White, 620 F.3d at 420-21. Unlike White, where the prescribed medication had rarely been used to treat someone with the defendant’s medical condition, see id., here medical professionals have prescribed a treatment plan with a documented history of success for individuals suffering, as Sanderson does, from paranoid schizophrenia.
III.
In sum, the special circumstances present in this case do not outweigh the government’s interest in prosecuting Sanderson. Only the length of Sander-son’s pretrial detention constitutes a special circumstance in his favor. But in light of the entire record, that consideration alone is insufficient to defeat the government’s interest in prosecuting Sanderson now for the charged SORNA offense. We therefore affirm the district court’s order.

AFFIRMED.

. The Sixth Circuit recently cited favorably to this portion of White and also measured the length of a defendant’s pretrial detention against the Guidelines range. See United States v. Grigsby, 712 F.3d 964, 973-74 (6th Cir.2013).

. We acknowledge that Sanderson's treatment regimen may extend to 12-14 weeks before he may be fit to stand trial. Adding this period to the length of his pretrial detention does not have a material impact on our analysis.

.Relying on his opinion in White, Judge Davis would also factor into the period of pretrial detention the additional time Sander-son will be detained "if he wishes to exhaust his appellate rights” as well as any "good time credits” to which Sanderson may be entitled. Post, at 241. It seems to us, however, that whether Sanderson will exhaust his appellate rights (and how long that will take) is entirely speculative, as is the amount of good time credit (if any) that Sanderson may earn while incarcerated. But even accepting that this additional period of confinement is relevant to the analysis and cuts against the *238 government’s interest in prosecuting the offense when compared to the estimated guidelines sentence proferred by counsel, we are satisfied that the government retains an "important interest in trying a defendant who is charged with a crime that has the potential of [a ten-year] prison term.” Evans, 404 F.3d at 239.